Filed 1/6/22  P. v. Timberlake CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>PAUL EDWARD TIMBERLAKE,<br><br>    Defendant and Appellant. | F082097<br><br>(Super. Ct. No. BF158240A)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  John R. Brownlee, Judge.

Jeffrey S. Kross, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Peña, Acting P. J., Smith, J. and Snauffer, J.

## STATEMENT OF APPEALABILITY

This appeal is from a judgment after this court's order remanding the matter in *People v. Timberlake* (Aug. 22, 2018, F073543 [nonpub. opn.] (*Timberlake I*)). This appeal finally disposes of all issues between the parties and is authorized by Penal Code[1] section 1237, subdivision (b).

## STATEMENT OF THE CASE

As stated by this court in its opinion in *Timberlake I*, "A jury acquitted appellant Paul Timberlake of first degree murder, but convicted him of the lesser included offense of second degree murder (Pen. Code, § 187, subd. (a); count 1). [Footnote omitted.] It also found him guilty of being a felon in possession of a firearm (§ 29800, subd. (a)(1); count 2); carrying a loaded firearm as an active street gang member (§ 25850, subd. (c)(3); count 3); and being an active member of a criminal street gang (§ 186.22, subd. (a); count 4). It found not true as to count 1, but true as to count 2, that the offense was committed for the benefit of or in association with a criminal street gang (§ 186.22, subd. (b)(1); and found true, as to all counts, personal firearm use enhancements (§§ 12022.5, subd. (a); 12022.53, subd. (d)). In a bifurcated proceeding, the trial court found Timberlake suffered two prior strike convictions (§ 667, subds. (c)-(j)), two prior serious felony convictions (§ 667, subd. (a)(1), and served two prior prison terms (§ 667.5, subd. (b))."

"The trial court sentenced Timberlake to an aggregate term of 65 years to life, consisting of 15 years to life, doubled, for count 1, plus 25 years to life (§ 12022.53, subd. (d), plus two five-year terms (§ 667, subd. (a)). The trial court stayed life terms on counts 2, 3, and 4 pursuant to section 654."

Timberlake appealed and in *Timberlake I* this court affirmed the judgment, but remanded the matter for the trial court to exercise its newly afforded discretion to strike

---

[1] All statutory references are to the Penal Code.

Timberlake's firearm enhancements under section 12022.53, subdivision (h) and section 12022.5, subdivision (c).

The court conducted a hearing on November 18, 2020, and declined to strike Timberlake's section 12022.53 firearm enhancement pursuant to Senate Bill No. 620 (2017-2018 Reg. Sess.), "[g]iven the gravity of the offense and the defendant's criminal history …." The court also declined to strike the section 667, subdivision (a)(1) enhancements, as would be allowed pursuant to Senate Bill No. 1393 (2017-2018 Reg. Sess.), enacted after this court filed its opinion in *Timberlake I*. Although they had not previously been imposed, the court dismissed the section 667.5, subdivision (b) enhancements pursuant to Senate Bill No. 136 (2019-2020 Reg. Sess.).

On November 24, 2020, Timberlake filed a timely notice of appeal.

## STATEMENT OF FACTS[2]

On the evening of November 7, 2014, Timberlake and his friend, Donnell Robinson, a Country Boy Crip, went to a "fish fry" and to have a couple of drinks at a friend's house. Later, Timberlake and Robinson went to purchase more alcohol and then headed to Martini's, a bar adjoining a bowling alley in Bakersfield.

At Martini's, Timberlake and Robinson socialized in the parking lot with other members of the Country Boy Crips. Also in the parking lot were members of a rival gang, the Eastside Crips.

Shortly before 10:30 p.m., a red Infiniti, driven by Eastside Crip Lionell McGee, stopped in the parking lot near Robinson's vehicle. Timberlake noticed the red Infiniti and thought it was unusual because it was parked laterally across the front of several parking spaces instead of in the parking space. After McGee got out of the Infiniti, Timberlake approached him from the rear of the car. According to Timberlake, McGee

---

**2** The Statement of Facts is quoted verbatim, without quotation marks, from this court's opinion in *Timberlake I*.

was not smiling and put his hand into his left jacket pocket. Timberlake pulled out a gun and shot McGee three times.

As Timberlake was running back to Robinson's vehicle, he was shot in the back. Robinson drove Timberlake to the hospital for treatment.

Police Officer Jess Beagley and other officers responded to a chaotic scene at Martini's. Fifty to sixty people were milling about in the parking lot and cars were leaving. Officer Beagley found McGee dead on the ground. McGee had entry and exit wounds in the center of his chest, as well as a gunshot wound to the front of his head. Three vehicles in the parking lot, including the red Infiniti, and the wall of a neighboring motel had evident bullet strikes.

Law enforcement obtained a surveillance video depicting the shooting from a camera positioned on the southwest corner of a nearby motel. The video was admitted as People's Exhibit 35 and played for the jury.

Timberlake testified on his own behalf. He admitted shooting McGee, but claimed he did so in self-defense. He threw the gun into a dumpster across the street before going to the hospital to have his own gunshot wounds treated. Timberlake's recorded police interview, in which he denied shooting McGee, was admitted as People's Exhibit 46 and played for the jury.

Timberlake admitted having associated with the Country Boy Crips, admitted being a gang member at the time of his 2007 conviction for drug sales, but testified he dropped out of the gang on his release from prison in 2009. Although he claimed he was no longer a Country Boy Crip when he shot McGee, he admitted he still carried a gun for protection because of his past association with the gang.

Timberlake acknowledged making the rap videos shown at trial in 2013 and 2014. He also admitted having 100 tattoos, but claimed only five or six were gang related and those were "over ten years old."

4.

**APPELLATE COURT REVIEW**

Timberlake's appointed appellate counsel has filed an opening brief that summarizes the pertinent facts, raises no issues, and requests this court to review the record independently. (*People v. Wende* (1979) 25 Cal.3d 436.) The opening brief also includes the declaration of appellate counsel indicating Timberlake was advised he could file his own brief with this court. By letter on May 12, 2021, we invited Timberlake to submit additional briefing. To date, he has not done so.

Having undertaken an examination of the entire record, we find no evidence of ineffective assistance of counsel or any other arguable error that would result in a disposition more favorable to Timberlake.

**DISPOSITION**

The judgment is affirmed.